**BURLINGTON NORTHERN RAILROAD COMPANY, Appellant,**

v.

**SOUTHWESTERN ELECTRIC POWER COMPANY, Appellee.**

No. 06–95–00031–CV.

Court of Appeals of Texas, Texarkana.

Argued July 25, 1995.

Decided Aug. 3, 1995.

Rehearing Overruled Aug. 29, 1995.

John R. Mercy, Texarkana, John L. Tidwell, Texarkana, Mike A. Hatchell, Tyler, William C. Gooding, Texarkana, Martin D. Schneiderman, Washington, DC, for appellant.

Michael V. Powell, Dallas, David E. Keltner, Fort Worth, G. William Lavender, Texarkana, AR, David R. Taggart, Shreveport, LA, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Burlington Northern Railroad Company appeals from the trial court's denial of its motion to seal court records in a lengthy lawsuit which resulted in an adverse judgment. It seeks to have sealed all trial exhibits, the statement of facts, and the closing arguments of counsel. We find no trial court error or abuse of discretion and affirm.

The sealing of court records and this appeal are grounded upon Texas Rule of Civil Procedure 76a. *See* Tex.R.Civ.P. 76a. The legislature mandated the Texas Supreme Court to adopt guidelines by which the courts might determine when court records should be sealed in civil cases. Tex.Gov't Code Ann. § 22.010 (Vernon Supp.1995). Responding, the Texas Supreme Court adopted Rule 76a. Court records are presumed to be open to the general public under the rule. Tex.R.Civ.P. 76a(1). In the rare instances when closure should be authorized, a court must first satisfy certain substantive and procedural requirements. *See* Lloyd Doggett & Michael J. Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest*, 69 Tex.L.Rev. 643, 655 (1991).

The most relevant part of Rule 76a, entitled Sealing Court Records, provides that:

**1. Standard for Sealing Court Records.** Court records may not be removed from court files except as permitted by statute or rule. No court order or opinion issued in the adjudication of a case may be sealed. Other court records, as defined in this rule, are presumed to be open to the general public and may be sealed only upon a showing of all of the following:

(a) a specific, serious and substantial interest which clearly outweighs:

(1) this presumption of openness;

(2) any probable adverse effect that sealing will have upon the general public health or safety;

(b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

Tex.R.Civ.P. 76a(1)(a), (b). After entry of the judgment in this case, Burlington Northern moved the trial court to seal the records.[1] The motion asserted as grounds that a specific, serious, and substantial interest clearly outweighed both the presumption of openness and any probable adverse effect sealing would have upon the public health and safety.

Southwestern Electric Power Company (SWEPCO), the party in whose favor judgment was rendered, opposed the motion to seal. SWEPCO contended that the trial was long and public and that the information had already been publicly disclosed. In several particulars, it maintained that Burlington Northern had failed to make a sufficient showing to entitle it to a sealing of the court records.

At the hearing on the motion, Burlington Northern's evidence consisted of two affidavits. The first affidavit is that of Sami Shalah, the director of coal marketing for Burlington Northern. In his affidavit, Shalah stated that it would potentially cause great harm to Burlington Northern in its efforts to compete for coal transportation for public utilities if the confidential agreement and

---

1. The motion to seal the records would, in effect, seal the entire record of the trial proceedings. We are not persuaded that Rule 76a contemplates sealing the entire record of the trial proceedings. However, neither side has raised a question regarding this issue; thus, we decline to address it.

contract which was entered into evidence and presented to the jury in this case were made available to the public on an unlimited basis. He stated that if the key terms of the contract were divulged to competitors, the consequences would be severe and irreversible, and that the single most competitively sensitive term in the contract is the provision for escalation of the base rate over a time period, because the principal element of that formula forms a pattern that Burlington Northern uses in its negotiations with different coal-burning utilities as a competitive device to win their business. He suggested that if such information were made available to its competitors, Burlington Northern would no longer be able to compete for new contracts. He further indicated that extensive information about the costs of transporting coal was also provided to SWEPCO under a protective order and that the cost data was extremely sensitive information which, if revealed to Burlington Northern's competitors or other customers, would irreparably undermine Burlington Northern's ability to bargain freely in the marketplace.

The second affidavit is that of Sarah Whitley, assistant general counsel for Burlington Northern. She stated that the contract and facts and circumstances relating to administration and proprietary cost data in this context were admitted into evidence at trial. She asserted that she was present for the entire trial of the case and that during the course of the trial the confidential information about rates and costs, as well as specific provisions contained in the 1984 Coal Transportation Agreement, were introduced both by testimony and by documentary evidence.

In response, SWEPCO provided four affidavits. David Taggart, an attorney retained by SWEPCO to represent it in arbitration relating to other claims against Burlington Northern, swore that no confidentiality agreement about the arbitration had been executed, although one had been discussed, and that even in the absence of such an agreement a complete copy of the 1984 agreement was attached as an exhibit to Burlington Northern's position paper presented at arbitration and that those papers have been available for review by employees,

fact witnesses, and potential experts for both SWEPCO and Burlington Northern.

SWEPCO also introduced an affidavit by Thomas Crowley, the president of an economic consulting firm specializing in transportation and railroad analysis. He swore that extensive numbers of the exhibits introduced at trial do not refer to anything related to the 1984 Coal Transportation Agreement and that he had previously obtained information of the same type provided by Burlington Northern for this proceeding in three other cases involving Burlington Northern. In those other cases, the records had not been sealed.

In another affidavit, James Heller, president of the Fieldston Company, stated that the company obtained a complete copy of the statement of facts in this case in December 1994 and that all of the materials had been read, analyzed, and evaluated as part of Fieldston's ongoing business, which includes information processing, consulting, publishing, and information support services for public utility and transportation companies. He also indicated that he did not believe that those materials had been spread any further than Fieldston Company, but that he was not certain about that because Fieldston had been under no duty to maintain such confidentiality.

Elizabeth Lang–Miers, another attorney representing SWEPCO, swore that the attorneys for both sides in the litigation had discussed a gag order with her at one point in the proceedings but that the request for such an order was never pursued to fruition.

At the Rule 76a hearing, Michael Gill, an attorney from Kansas City, Missouri, testified for SWEPCO. Gill represents the Nebraska Public Power District (NPPD) in a Nebraska suit filed by Burlington Northern against the NPPD. Gill attended the trial, heard all the testimony, and examined all of the exhibits. He testified that the SWEPCO–Burlington Northern contract was much the same as a NPPD–Burlington Northern contract, that Burlington Northern had attached that contract to its pleading in the Nebraska litigation and that the contract was a public record. Gill contradicted Shalah's affidavit concerning the confidentiality of

Burlington Northern's price escalation formula. He further indicated that access to the record of the SWEPCO–Burlington Northern trial will better serve the search for the truth and reduce the cost of litigation in the Nebraska proceedings.

After considering the matters presented at the hearing, the trial court determined that Burlington Northern's interest in preventing the disclosure of matters contained in the statement of facts, trial exhibits, and transcription of the attorneys' closing arguments did not clearly outweigh the presumption of openness of court records. It also determined that the matters presented during the open trial that took place in October and November, 1994, had already been publicly disclosed. The court denied the motion to seal.

■■■ We turn now to our review of the trial court's order. Both SWEPCO and Burlington Northern urge that the standard of review is whether the trial court abused its discretion. The Eastland, Dallas, and Beaumont Courts of Appeals have applied an abuse of discretion standard of review.[2] On the other hand, there is solid support for the proposition that the proper standard is whether the court's order is supported by legally and factually sufficient evidence.[3] The abuse of discretion standard requires this court to determine whether the trial court acted without reference to any guiding rules or principles, or has acted in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In reviewing under sufficiency of the evidence standards, our roles are well delineated. In reviewing a no evidence point of error, we consider only the evidence and inferences that support the challenged finding, and we disregard all evidence and inferences to the contrary and uphold the finding if there is any evidence of probative force to support the finding. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In considering a factual sufficiency point, we consider and weigh all the evidence and reverse for a new trial only if the challenged finding is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

In our review of the trial court's order denying closure, under either standard of review—abuse of discretion or factual sufficiency—we are compelled to uphold the trial court's ruling. The trial court was guided by and followed the principles contained in Rule 76a, and sufficient evidence supports the trial court's order.

We affirm the trial court's order denying the motion to seal the record in this case.

**2.** *Boardman v. Elm Block Dev. Ltd. Partnership,* 872 S.W.2d 297, 299 (Tex.App.—Eastland 1994, no writ); *Upjohn Co. v. Freeman,* 847 S.W.2d 589, 590 (Tex.App.—Dallas 1992, no writ); *Dunshie v. General Motors Corp.,* 822 S.W.2d 345, 347 (Tex.App.—Beaumont 1992, no writ).

**3.** *See Fox v. Anonymous,* 869 S.W.2d 499, 505 (Tex.App.—San Antonio 1993, writ denied); Lloyd Doggett & Michael J. Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest,* 69 Tex.L.Rev. 643, 683 (1991).