### In re The UNIVERSITY OF TEXAS HEALTH CENTER AT TYLER, Relator.

No. 99–0450.

Supreme Court of Texas.

Oct. 26, 2000.

Rehearing Overruled Jan. 17, 2001.

**824**

Russ Wayne Harris, John Cornyn, Andy Taylor, Linda Eads, Office of the Attorney General of Texas, Austin, for Relator.

Ron Adkison, Wellborn Houston Adkison Mann Sadler & Hill, Henderson, for Respondent.

## PER CURIAM.

In the underlying litigation, the trial court ordered the University of Texas Health Center at Tyler to produce documents that the Health Center contends are protected from discovery by statutory medical peer review committee privileges created by former section 5 .06 of the Medical Practice Act and section 161.032 of the Texas Health and Safety Code. Janus McClain, the plaintiff in the underlying lawsuit, contended that the statutory privilege had been waived. We conclude that there has been no waiver of the exemption from discovery afforded by these statutes. Accordingly, the trial court abused its discretion by ordering production of all documents, and we conditionally grant a writ of mandamus.

James McClain and several other patients at the Health Center contracted an infection following open heart surgery. McClain and members of his family (collectively McClain) sued the Health Center and other defendants, asserting negligence. During discovery, McClain noticed the deposition of corporate representatives of the Health Center, and included within that notice a request for production of several categories of documents. This mandamus proceeding concerns documents that the Health Center contends were prepared by one of its peer review committees, the Infection Control Committee, as

part of an evaluation of the medical care provided to McClain and the other patients who became infected.

The trial court conducted an evidentiary hearing, and the Health Center submitted the documents at issue for *in camera* inspection. A few days after that hearing, without notice to the Health Center, the trial court gave McClain the documents that had been submitted *in camera*. As soon as the Health Center learned that the trial court had released the documents, it objected. The trial court ordered the documents returned and held a second hearing. Additional testimony was taken, and the trial court ultimately entered an order requiring the Health Center to produce the documents to McClain. The court of appeals denied the Health Center's petition for writ of mandamus without an opinion, and the Health Center seeks relief in this Court.

At the time that the proceedings took place in the trial court, the Medical Practice Act was contained in article 4495b of the Revised Civil Statutes of Texas. Effective September 1, 1999, that article was repealed and recodified in the Texas Occupation Code. We will refer in this opinion to article 4495b as it existed when the trial court made its decision.

Article 4495b provided that health-care entities may form peer review committees, defined in former section 1.03(a)(6), to evaluate the quality of medical and health-care services and the competence of physicians:

> "Medical peer review committee" . . . means a committee of a health-care entity, the governing board of a health-care entity, or the medical staff of a health-care entity, provided the committee or medical staff operates pursuant to written bylaws that have been approved by the policy-making body or the governing board of the health-care entity and authorized to evaluate the quality of medical and health-care services or the competence of physicians. . . .

Former TEX.REV.CIV.STAT.ANN. art. 4495b, § 1.03(a)(6).[1] The statute defined "medi-

**1.** Act of May 26, 1999, 76th Leg., R.S., ch. 693, § 1, 1999 Tex.Gen.Laws 3295, 3296, *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex.Gen.Laws 1431, 2439 (current version at TEX.OCC.CODE § 151.002(a)(8)).

cal peer review" or "professional review action" to include "evaluation of the merits of complaints relating to health-care practitioners and determinations or recommendations regarding those complaints," evaluation of "reports by a medical peer review committee to other committees or to the board," and evaluation of "implementation of the duties of a medical peer review committee by its members, agents, or employees." *Id.* § 1.03(a)(9)(D)-(E).[2]

All proceedings and records of a medical peer review committee are confidential, and all records of, determinations of, and communications to a committee are privileged and are not discoverable, with certain exceptions not relevant here. *See* former TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06(g), (j), (s)(3)[3]; *see also Brownwood Reg'l Hosp. v. Eleventh Court of Appeals,* 927 S.W.2d 24 (Tex.1996). Section 161.032 of the Health and Safety Code similarly provides that "[t]he records and proceedings of a medical committee are confidential and are not subject to court subpoena." TEX.HEALTH & SAFETY CODE § 161.032(a).

▮ Many of the documents at issue in this proceeding reveal on their face that they are "records or determinations of or communications to a medical peer review committee," "reports and records received, maintained, or developed by ... a medical peer review committee" within the mean-

ing of section 5.06(j) and (s)(3) of former article 4495b, "evaluation[s] of medical and health-care services," or "evaluation[s] of the merits of complaints relating to health-care practitioners" within the meaning of section 1.03(a)(9) of former article 4495b. At an evidentiary hearing regarding the documents, the director of Clinical Research Management at the Health Center authenticated the Health Center's by-laws authorizing its Infection Control Committee to evaluate the quality of health-care services. In response to McClain's deposition notice, she searched the Infection Control Committee's records, which were segregated from other records at the Health Center and were kept secure. She located responsive documents and confirmed that all of them were created by or at the request of the committee in connection with its evaluation of the medical care received by McClain and the other patients who contracted an infection. The foregoing evidence, which is undisputed, establishes that all the documents at issue were within the statutory privilege created by section 5.06 of former article 4495b and by section 161.032 of the Health and Safety Code. *See generally Irving Healthcare Sys. v. Brooks,* 927 S.W.2d 12 (Tex.1996); *Brownwood Reg'l Hosp.,* 927 S.W.2d at 25.

McClain's principal contention is that the privilege was waived when 1) the Health Center failed to object to the sec-

---

**2.** Former section 1.03(a)(9) provided in its entirety that:

(9) "Medical peer review" or "professional review action" means the evaluation of medical and health-care services, including evaluation of the qualifications of professional health-care practitioners and of patient care rendered by those practitioners. The term includes evaluation of the merits of complaints relating to health-care practitioners and determinations or recommendations regarding those complaints. The term specifically includes evaluation of:

(A) accuracy of diagnosis;

(B) quality of the care rendered by a health-care practitioner;

(C) reports made to a medical peer review committee concerning activities under the committee's review authority;

(D) reports by a medical peer review committee to other committees or to the board as permitted or required by law; and

(E) implementation of the duties of a medical peer review committee by its members, agents, or employees.

Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 1, 1987 Tex.Gen.Laws 2325, 2326, *repealed by* Act of May 13, 1999, 76th Leg., R.S ., ch. 388, § 6(a), 1999 Tex.Gen.Laws 1431, 2439 (current version at TEX.OCC.CODE § 151.002(a)(7)).

**3.** Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2334–36, *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex.Gen.Laws 1431, 2439 (current version at TEX.OCC.CODE §§ 160.007(a), (b), (e)-(g), 160.006(c)).

ond of three virtually identical deposition notices, 2) the Health Center did not comply with recently promulgated Rule of Civil Procedure 193 in making its objections, and 3) the Health Center provided information about the committee's evaluation in answers to interrogatories served by another patient in a suit that was consolidated for discovery with McClain's. We consider each of these contentions in turn.

The day after McClain served his first deposition notice and request for documents, the Health Center served written objections, a motion for protective order, and a motion to quash, which asserted the statutory peer review privileges, among other matters. A few days later, on November 9, McClain served an "Amended Notice of Intention to Take Oral Deposition" that was identical to the first notice, except for the date of the deposition. The Health Center advised that it would not produce a witness on the specified date. Then on December 4, McClain served a third notice that was the same as the two prior ones except for the date of the deposition, which was to be December 15. A week after the third notice was served, the Health Center filed its "Supplemental Objection to Second Amended Notice of Deposition, Motion for Protection, and Motion to Quash Subpoena Duces Tecum." In that pleading, the Health Center continued to assert that the documents requested were subject to statutory peer review committee privileges.

■ McClain contends that the Health Center waived its objections by failing to object to McClain's second notice, the "Amended Notice," served on November 9. We disagree. The Health Center had already made its objections clear in response to the earlier, virtually identical notice and request for documents. It was not required to reiterate its objections when only the date and time of the deposition were changed.

■ McClain also contends that the Health Center did not comply with new Rule 193 when it made its objections. That rule provides, among other things, that a "party should not object to a request for written discovery on the grounds that it calls for production of material or information that is privileged but should instead comply with Rule 193.3. A party who objects to production of privileged material or information does not waive the privilege but must comply with Rule 193.3 when the error is pointed out." TEX. R.CIV.P. 193.2(f). The amended rule did not become effective until January 1, 1999, which was after McClain had served the final notice and after the Health Center had filed its objections to that notice. In any event, the Health Center's objections and motions made it clear that documents would not be produced and the basis for the objections, and thus, the Health Center did not waive any privileges under Rule 193.

■ The third basis for waiver, McClain contends, is an answer the Health Center gave in response to another plaintiff's interrogatory. The interrogatory answer provided some information about the committee's recommendations.[4] The Health

---

4. The interrogatory and the Health Center's response were:

(i) Following discovery of surgical incision infection of Mrs. Wyatt, what procedural changes, if any, were recommended by the Infection Control Committee to strengthen the sterile barrier before the cardiac surgery was resumed, and please state the date that cardiac surgery was resumed. ANSWER:

Objection. The form of this question suggests that the procedures in place at the time of the outbreak were in some way inadequate. Further, to the extent that procedures instituted as part of the investigation of the outbreak and after could be construed as "subsequent remedial measures" pursuant to Rule 407 of the Texas Rules of Evidence, the information requested is not admissible. Subject to the foregoing objection, and without waiving same, during the investigation of the outbreak, the following were recommended:

1. Moratorium on sternotomy/cardioascular[sic] surgeries;

Center had objected that the interrogatory called for remedial measures and that its answer could not be used against it, but the Health Center provided the requested information and did not assert a peer review privilege.

■ Former section 5.06 of the Medical Practice Act specifically addressed waiver. It provided that only a committee may execute a waiver, and the waiver must be in writing:

> Unless disclosure is required or authorized by law, records or determinations of or communications to a medical peer review committee are not subject to subpoena or discovery and are not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee.

*See* former TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06(j).[5] Further, the Act provided that the party who seeks information has the burden of proving waiver: "Any person seeking access to privileged information must plead and prove waiver of the privilege." *Id.* McClain had the burden of proving that the Health Center had waived its privileges.

In its written and verified answer to the interrogatory at issue, the Health Center voluntarily set forth specific recommendations that its medical peer review committee had made during its investigation of the outbreak of infection. However, the voluntary production of information about the Infection Control Committee's recommendations in response to a discovery request does not waive the privilege that protects the documents received, maintained, or developed by the committee from discovery in this suit asserting health-care liability claims. Former section 5.06(j) provided the means for waiving the privilege, and there was no waiver in accordance with that statute. McClain is not entitled to the documents at issue.

■ We note that the trial court did not waive the Health Center's privilege when it released the documents at issue to McClain. The privilege belonged to the Health Center, not the trial court, and production was involuntary from the Health Center's standpoint. An involuntary production of documents did not constitute a waiver, even before implementation of our new rules of procedure governing discovery. *See generally Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223, 226 (Tex.1992) (explaining that "[d]isclosure is involuntary only if efforts reasonably calculated to prevent the disclosure were unavailing").

■ The Health Center does not have an adequate remedy by appeal, and mandamus is appropriate to address a court order requiring production of privileged documents. *See Brownwood Reg'l Hosp.*, 927 S.W.2d at 27–28.

Accordingly, pursuant to Rule 52.8(c) of the Texas Rules of Appellate Procedure, the Court grants the petition of the Health Center, and, without hearing oral argument, conditionally grants a writ of mandamus directing the trial court to vacate its

2. An investigation was instituted to establish the cause/source of the infections;

3. The Center for Communicable Disease Control was contacted for recommendations and/or assistance in the investigation;

4. All persons attending patients with sternotomy wounds were to were [sic] gloves and masks at all times;

5. Housekeeping was to use different supplies for surgery cleaning and change their clothes when going into each operating suite;

6. After leaving the surgery area, surgery personnel were to change scrubs before re-entering the surgery area;

7. The Director of Pharmacy was to monitor the preparation of carioplegia and vein solutions.

5. Act of June 1, 1987, 70th Leg., R.S., ch. 596, § 18, 1987 Tex.Gen.Laws 2325, 2335, *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex.Gen.Laws 1431, 2439 (current version at TEX.OCC.CODE § 160.007(e)-(g)).

order requiring that the Health Center produce the documents at issue.