In re FORD MOTOR COMPANY.

No. 05–0696.

Supreme Court of Texas.

Dec. 22, 2006.

Michael W. Eady, William Leonard Mennucci, Brian Hensley, Thompson, Coe, Cousins & Irons, L.L.P., Craig A. Morgan, Austin, for Relator.

Mikal C. Watts, James Hobart Hada, David T. Bright, Watts Law Firm, L.L.P., John Blaise Gsanger, The Edwars Law Firm, L.L.P., Corpus Christi, for Real Party In Interest.

Van Huseman, Huseman & Pletcher, Corpus Christi, for Other.

Deborah J. Bullion, Gascoyne & Bullion, P.C., Sugarland, Kevin P. Curry, Bowman and Brooke, LLP, Minneapolis, MN, for Intervenor.

PER CURIAM.

Relator Ford Motor Company and intervenor Volvo Car Corporation seek a writ of mandamus to vacate a trial court order that declared certain Volvo documents non-confidential under a provision in a stipulated protective order. Because the trial court's order permitting disclosure contradicted the plain meaning of the parties' agreement, we conditionally grant mandamus relief.

Matthew Marroquin died after being partially ejected from a Ford Expedition that rolled over after being struck at an intersection. His family filed a product liability suit against Ford and requested numerous documents from Volvo, a wholly-owned-but-distinct Ford subsidiary that was not a party in the underlying case.

To facilitate discovery while maintaining the confidentiality of Volvo's documents, the parties agreed to a "Stipulated Sharing Confidentiality Protective Order Regarding Volvo Documents" ("protective order"). The protective order stipulated the parties would keep confidential those Volvo docu-

ments containing "trade secrets and other confidential research, development and commercial information." The agreed protective order stated that any document Ford designated as "confidential" would be treated as such and not disclosed or disseminated, and it also prescribed a procedure for the Marroquins to contest any such designation. In addition, the stipulated agreement permitted the Marroquins to use the documents in litigation, and even authorized sharing the documents with other plaintiffs suing Ford in similar suits, provided those plaintiffs committed to the same protective order. The protective order, however, excluded certain documents from its scope, including "documents that have been submitted to any government entity without request for confidential treatment." The order also specified that "[i]nadvertent or unintentional production of documents or information containing information which should have been designed [sic] 'confidential' shall not be deemed a waiver in whole or in part of the party's claims of confidentiality." After both parties signed and filed the order with the court, Ford designated as confidential and produced under seal numerous Volvo documents, including several reports and videos related to rollover testing of the Volvo XC–90 sport-utility vehicle.

Meanwhile, a plaintiff ("Duncan") in Florida state court was litigating similar product liability claims against Ford, and Ford submitted under seal the same documents under a similar protective order. The clerk of the Florida court, however, set off a chain of events by inadvertently allowing an unknown number of persons, including interest groups and the media, to access the documents. One person who apparently gained access was Sean Kane, an independent automotive safety expert and consultant for plaintiff Duncan. Kane submitted portions of the rollover documents to the National Highway Traffic Safety Administration ("NHTSA"), which posted them on its website where they were freely downloadable. Plaintiff Duncan moved to have the documents declared non-confidential, insisting the public disclosure had destroyed the documents' protection, but the Florida court said the rollover documents remained protected. The NHTSA promptly removed the documents from its website.

Following these events, the Marroquins likewise argued that the Volvo rollover documents cannot be deemed confidential given their public availability and "widespread nationwide disclosure" through the Florida court clerk's office, the NHTSA website, and the attendant media coverage discussing the documents. With this level of public disclosure, the Marroquins asserted that Ford could not plausibly assert trade secrecy.

The Texas trial court granted the Marroquins' Motion to Deem Certain Documents Non–Confidential, but because Ford only had five days' notice of the hearing, not the thirty days' notice prescribed by the protective order, the trial court held a second hearing a month later (after mandamus proceedings had begun in this Court). The trial court again granted the Marroquins' motion and deemed the documents non-confidential. In its Order and Findings of Fact, the court said the documents satisfied an exclusion provision and thus fell outside the protective order because they had previously been posted on the NHTSA website. The court also referenced the *Duncan* case in Florida and said the clerk's release of the documents and widespread news coverage had impaired Ford's claim of secrecy.

We consider Ford's request for mandamus relief under a well-settled standard: mandamus is proper when the trial court has abused its discretion by commit-

ting a clear error of law for which appeal is an inadequate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *see* Tex. Gov't Code § 22.002(a). Moreover, as we have repeatedly held, appeal is inadequate when a trial court erroneously orders the production of confidential information or privileged documents. *In re Bass*, 113 S.W.3d 735, 745 (Tex.2003); *In re Univ. of Tex. Health Ctr. at Tyler*, 33 S.W.3d 822, 827 (Tex.2000) (per curiam); *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 649 (Tex.1995); *Walker v. Packer*, 827 S.W.2d at 843.[1]

The Marroquins' arguments, at bottom, are essentially three-fold: (1) the government's publication of the documents triggered the protective order's exclusionary clause and thus took the documents outside the scope of the protective order; (2) even if the exclusionary clause was not invoked, the documents do not qualify as trade secrets; and (3) even if the documents did qualify as trade secrets at one time, the documents' widespread public dissemination defeats Ford's secrecy claim. We reject these arguments as legally untenable and prudentially unsound.

1. *Whether the Exclusionary Provision of the Protective Order Applies*

The stipulated protective order captures the parties' clear intent right at the beginning: "to protect the respective interests of the parties and to facilitate the progress of discovery in this case...." To accomplish this, Ford agreed to provide confidential Volvo documents, and the Marroquins agreed not to disclose them. One of the principal interests of Ford and Volvo was to prevent disclosure of their "proprie-

tary information and/or trade secrets." The parties thus agreed not to disclose any Volvo documents produced by a party "which contain trade secrets and other confidential research, development and commercial information" without "the prior written consent of the producing party."

The protective order excluded certain documents from confidential treatment, however, including "documents that have been submitted to any government entity without request for confidential treatment." The trial court found that this clause applied because the disputed documents had been submitted to the NHTSA without a confidentiality request.

 Standing alone, the exclusionary provision does not specify whose submission would render the documents unprotected. A stipulation provision, however, like any contract provision, cannot be read in isolation; all the provisions must be considered with reference to the whole. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). In other provisions that mention actions involving the Volvo documents, the actors are always Volvo or the producing party Ford. For example:

- The protective order refers to "documents or information generated by or obtained from Volvo (Volvo documents) that are proprietary to the Defendants...."

- The order extends to "Volvo documents to be produced by a party," specifically to "[a]ll documents or things which any party designates as 'confidential'...."

- The "prior written consent of the producing party" is required to disclose

---

**1.** In fact, mandamus is the only procedural option in this case. The underlying dispute is over, having already gone to trial and final judgment, so the instant controversy—wheth-

er the Marroquins (or their counsel) can pass around the Volvo materials—can only be resolved by mandamus.

the documents to persons not listed in the order.

Given that every other reference to the disputed documents has Volvo or Ford "generating," "designating," and "consenting," the only reasonable interpretation is that these companies—the parties with the paramount interest in protecting confidential information—would be the ones whose voluntary submission would forfeit the privilege. To interpret this provision otherwise would cover a multitude of absurdities and sins; it would theoretically allow even a burglar to abolish instantly and irretrievably the documents' confidentiality by stealing and then submitting them to the government. As the protective order itself makes clear, even an inadvertent disclosure by Ford or Volvo itself of a document that *should* have been designated confidential "shall not be deemed a waiver in whole or in part of the party's claims of confidentiality." Surely, an unintentional disclosure by a third party of something marked "confidential" would not waive what an unintentional disclosure by Ford or Volvo of something it neglected to mark "confidential" would not waive.

The protective order yields only one reasonable interpretation: either Ford or Volvo (or their agents) must submit the documents to a government agency without requesting confidential treatment for the exception to apply. The trial court plainly erred when it deemed the documents nonconfidential under the exclusionary provision.

### 2. *Whether the Disputed Documents Qualify as Trade Secrets or Otherwise Confidential Information Under the Protective Order*

The Marroquins have an alternative argument: even if Volvo's rollover documents fall within the protective order, the documents are no longer confidential because they cannot be deemed trade secrets. Quoting a 1964 case, the Marroquins insist that once a secret is disclosed, "[t]he 'trade secret' is no longer 'secret[']' ... and is no longer entitled to the protection of the law of trade secrets." *Atlas Bradford Co. v. Tuboscope Co.*, 378 S.W.2d 147, 148 (Tex.Civ.App.-Waco 1964, no writ). On these facts, we disagree.

The Marroquins contend that the Florida court clerk's release of the documents to numerous individuals, which led to posting on the NHTSA website and various media reports, destroyed any secrecy the documents might have had. As a threshold matter, we need not reach the Marroquins' definitional argument that the disputed documents—either pre- or post-disclosure—do not qualify as trade secrets. By its terms, the agreed protective order covers Volvo documents "which contain trade secrets *and other confidential research, development and commercial information.*" (emphasis added). To be sure, the order protects trade secrets, but just as surely it also protects documents that, while not rising to the level of a trade secret, still contain confidential information.

Despite these clear terms, the Marroquins urge a narrow interpretation that reads everything after "trade secret" as mere surplusage. This strained interpretation ignores the protective order's unequivocal language. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex.2000) (holding that a court will construe a contract as a matter of law when it "is worded so that it can be given a certain or definite legal meaning"); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987) ("Courts will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive."). Although a trial court often considers protective orders in the context of

trade secrets, *e.g.*, *Garcia v. Peeples*, 734 S.W.2d 343, 346 (Tex.1987), the express terms of the parties' agreed protective order make clear that trade secrets are not the only materials worthy of protection.[2] In any event, the trial court did not hold that the materials never merited protection under the agreed order, only that the Florida-related disclosures had triggered the order's exclusion and rendered public the otherwise-privileged information.

■ Volvo's rollover documents involve types of proprietary information a business desires to keep confidential. The documents contain not only the results of engineering and crash tests performed on one of Volvo's popular vehicles; they also indicate the process of how those tests were constructed and performed. Volvo claims that its reputation for safety has been earned in part via testing methods that exceed government standards. Volvo developed these testing processes and generated the results after tremendous capital investments and therefore has asserted a sufficient commercial interest in preventing competitors from seeing those materials.

Although this commercial interest in secrecy means little if the owner of the proprietary information does nothing to maintain confidentiality, *see* BLACK'S LAW DICTIONARY 318 (8th ed.1999) (defining *confidential* as "meant to be kept secret"), both Volvo and Ford did much to keep these documents confidential. Volvo stores its documents in secure facilities that have restricted access. It does not publish or otherwise voluntarily disclose the specific test procedures and methods used in testing its automobiles. Further, it restricts the access of its own personnel to these documents. Volvo has procedures specifying which individuals may view and circulate the documents and how, and it limits copying of its documents. Confidential documents are labeled "Test Report, For Internal Company Use Only." Volvo via Ford agreed to turn over these documents to the Marroquins subject to a stipulated protective order that limited disclosure without a court order or the permission of Volvo or Ford and required that all documents submitted as "confidential" would be

---

**2.** It also merits mention that the protective order at issue closely tracks the language of Federal Rule of Civil Procedure 26(c)(7), which broadly protects not only trade secrets but also an array of other confidential information. FED. R. CIV. P. 26(c)(7) (permitting protective orders for "a trade secret or other confidential research, development, or commercial information"). The United States Supreme Court has construed this language to cover more than just trade secrets. In *Federal Open Market Committee of the Federal Reserve System v. Merrill*, a law student sought disclosure from a government agency of its Record of Policy Actions. 443 U.S. 340, 346–47, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979). Although these government records were not trade secrets, the agency argued that they constituted confidential commercial information and were subject to protection under federal case law and procedural rules. *Id.* at 356, 99 S.Ct. 2800 (quoting Federal Rule

26(c)(7) as permitting protective orders for "a trade secret or other confidential research, development, or commercial information"). The Court found that the government records were commercial information because they related to buying and selling securities, and they were confidential because the agency kept them secret for a month before disclosure. *Id.* at 361, 99 S.Ct. 2800. The Court wrote that a protective order under Rule 26(c)(7) may be warranted for such confidential commercial information. *Id.* at 357, 99 S.Ct. 2800. Other federal courts have indicated that protective orders apply more broadly than just to trade secrets. *E.g., Aluminum Co. of Am. v. U.S. Dept. of Justice, Antitrust Div.*, 444 F.Supp. 1342, 1343, 1346 (D.D.C.1978) (holding that protective order was warranted "to limit disclosure of confidential information" in the form of "highly sensitive financial and business data").

sealed. Notably, the Marroquins do not assert that Ford or Volvo has done anything to disclose these materials, or acquiesced in their disclosure by a third party.

Finally, in the *Duncan* litigation in Florida, production of the rollover documents was subject to a protective order that contained terms almost identical to those here. We therefore conclude that Volvo and Ford took sufficient actions to maintain the confidentiality of the rollover documents. Accordingly, the rollover documents warrant confidential treatment under the plain terms of the stipulated protective order.

### 3. Whether the Public Disclosure of the Disputed Documents Defeats Their Confidentiality

Finally, the Marroquins argue that, whether or not these documents were once covered by the protective order, their much-reported publication destroys any present claim of confidentiality. For their part, Ford and Volvo focus on how the documents were disclosed—by the Florida court clerk's improper release—rather than on how many people accessed them. This qualitative rather than quantitative view is the more correct statement of our case law.

The privilege to maintain a document's confidentiality belongs to the document owner, not to the trial court. *Univ. of Tex.*, 33 S.W.3d at 827. Under Texas law, discovery privileges are waived by *voluntary* disclosure by the *holder* of the privilege. *Id.;* Tex.R. Evid. 511(1). Mistaken document production by a court employee in violation of a court-signed protective order cannot constitute a party's voluntary waiver of confidentiality. *See Univ. of Tex.*, 33 S.W.3d at 827; *Granada Corp. v. Hon. First Court of Appeals,* 844 S.W.2d 223, 226 (Tex.1992) ("Disclosure is

involuntary only if efforts reasonably calculated to prevent the disclosure were unavailing."). The rollover documents were produced in the *Duncan* litigation in Florida under a protective order that limited disclosure and required that the documents be kept under seal. When the Florida court clerk's office breached its non-disclosure duty and erroneously made them publicly available, those unauthorized disclosures were involuntary as to Ford and Volvo. All these companies did was entrust the materials to court employees who were supposed to honor a binding, court-signed order and keep them under seal. And the resulting submission to NHTSA by the Florida plaintiff's consultant certainly should not prejudice Volvo in the instant case by subverting a Texas protective order that the parties freely and carefully negotiated. No matter how many people eventually saw the materials, disclosures by a third-party, whether mistaken or malevolent, do not waive the privileged nature of the information. This principle should apply with particular force when documents are entrusted to a court.

Agreed protective orders and confidentiality agreements matter; they matter because the parties vest confidence in them; and such confidence vanishes if these important protections are casually disregarded. *See* Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L.Rev. 427, 501 (1991) ("The reality seems obvious: for protective orders to be effective, litigants must be able to rely on them."). Indeed, the phrase "protective order" becomes a misnomer if parties are unable to trust them—or trust the courts that enforce them—thus fueling litigation that is far more contentious and far more expensive.

The Florida-related disclosures have not waived the confidential status of the rollover documents and do not authorize the

Marroquins (or their counsel) to disclose covered confidential information, trade secret or not. The Texas trial court erred in declaring that the disputed documents fell outside the agreed protective order, an error for which there is no adequate appellate remedy. Accordingly, pursuant to Rule 52.8(c) of the Texas Rules of Appellate Procedure, we grant Ford's petition, and, without hearing oral argument, conditionally grant a writ of mandamus directing the trial court to vacate its order deeming the Volvo documents non-confidential.