

NUMBER 13-06-00070-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VOLVO CAR CORPORATION AND
FORD MOTOR COMPANY,                                              Appellants,

v.

CARLOS MARROQUIN AND LINDA J.
MARROQUIN, INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF MATTHEW
MARROQUIN, DECEASED, ET AL.,                                     Appellees.

### On appeal from the County Court at Law No. 1
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Wittig[1]
### Memorandum Opinion Per Curiam

Appellants, Volvo Car Corporation ("Volvo") and Ford Motor Company ("Ford"),

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

appeal the denial of their motion to seal three documents entered into evidence in the underlying products liability case. *See* TEX. R. CIV. P. 76a. We affirm in part and reverse and remand in part.

## I. BACKGROUND

In the underlying case, appellees Carlos Marroquin and Linda J. Marroquin, individually and on behalf of the estate of Matthew Marroquin, sued Ford for death and injury damages arising out of a vehicular crash of a 2000 Ford Expedition. Volvo was not a party but later intervened to protect a proprietary Volvo document.

Prior to the Marroquin's lawsuit, a similar lawsuit involving Ford and Volvo occurred in Florida.[2] The same documents were produced during discovery, also under protective orders. Through an error of the Florida court, many of the documents were made accessible to the public, including the document Volvo seeks to protect here, and were published in print media and on the National Highway Traffic Safety Administration's ("NHTSA") website. Ford and Volvo successfully sought to have the Florida court enforce the protective orders and to have NHTSA remove the documents from its website. The Marroquins use the events occurring in the Florida case as the basis for much of their argument before us.

The documents at issue in the present case were also produced under various protective orders, and during the course of the trial, based in no small part on the events occurring in the Florida case, the trial court declared some of Volvo's documents to be "non-confidential." Ford and Volvo petitioned the Texas Supreme Court for a writ of

---

[2] The supreme court and the parties refer to this as the "Duncan" litigation, and so will we. *See In re Ford Motor Co.*, 211. S.W.3d 295, 297 (Tex. 2006).

mandamus directing the trial court to vacate the order.

The supreme court conditionally granted Ford and Volvo's petition and issued a write of mandamus vacating the trial court's order regarding the confidentiality of the Volvo document at issue in this appeal. *See In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006). As identified by the supreme court, the Marroquin's arguments were:

(1)     the government's publication of the documents triggered the protective order's exclusionary clause and thus took the documents outside the scope of the protective order;

(2)     even if the exclusionary clause was not invoked, the documents do not qualify as trade secrets; and

(3)     even if the documents did qualify as trade secrets at one time, the documents' widespread public dissemination defeats Ford's secrecy claim.

*Id.* at 298. The supreme court rejected these arguments as "legally untenable and prudentially unsound." *Id.*

While the mandamus request was pending before the supreme court and following a trial and jury verdict in favor of the Marroquins, both Ford and Volvo, under rule 76a, filed a motion to seal two Ford documents[3] and one Volvo document, which had been admitted into evidence during the trial. *See* TEX. R. CIV. P. 76a. The trial court denied their motions, and this appeal ensued.

## II.     STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision on a rule 76a motion under an abuse of discretion standard. *See* TEX. R. CIV. P. 76a (regarding the sealing of court records); *Gen. Tire Inc.*

---

[3] The two Ford documents are, in general terms: (1) an internal, customer preference study used by Ford to improve its vehicle design and marketing strategies; and (2) an industry survey procured by Ford from J.D. Powers & Associates under a non-exclusive licensing agreement, which was also used for design and marketing purposes.

*v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or by acting in a unreasonable and arbitrary manner. *Compaq Computer Corp. v. Lapray*, 75 S.W.3d 669, 672 (Tex. App.–Beaumont 2002, no pet.) (citing *Gen. Tire*, 970 S.W.2d at 526). "A trial court does not abuse its discretion when it bases its decisions on conflicting evidence." *Id.* (citing *Gen. Tire*, 970 S.W.2d at 526).

"In the rare instances when closure should be authorized, a court must first satisfy certain substantive and procedural requirements." *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 905 S.W.2d 683, 684 (Tex. App.–Texarkana 1995, no writ); *see Boardman v. Elm Block Dev. Ltd. P'ship.*, 872 S.W.2d 297, 299 (Tex. App.–Eastland 1994, no writ) (noting that the party seeking to seal court records has a heavy burden).

Rule 76a provides that "court records . . . are presumed to be open to the general public and may be sealed" only in limited circumstances.[4] TEX. R. CIV. P. 76a(1); *see Boardman*, 872 S.W.2d at 299. To overcome the presumption of openness, the movant must show that it has "a specific, serious and substantial interest which clearly outweighs" "this presumption of openness" and "any probable adverse effect that sealing will have upon the general public health or safety" and that "no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted." TEX. R. CIV. P. 76a(1)*.*

"[A] properly proven trade secret is an interest that should be considered in making

---

[4] As used in rule 76a, "court records" is a term of art which includes, among other documents and with limited exceptions, "all documents of any nature filed in connection with any matter before any civil court . . . ." TEX. R. CIV. P. 76a(2). In the present case, there is no dispute regarding whether the documents at issue are court records as defined by the rule. *See id.*

4

the determination required by rule 76a." *Eli Lilly & Co. v. Marshall*, 829 S.W.3d 157, 158 (Tex. 1992); *see also Gen. Tire*, 970 S.W.2d at 530 (Spector, J., concurring in part and dissenting in part). "A properly proven trade secret interest may constitute a specific, serious, and substantial interest, which would justify restricting access to the documents in question." *Upjohn Co. v. Freeman*, 906 S.W.2d 92, 96 (Tex. App.–Dallas 1995, writ denied) (citing *Marshall*, 829 S.W.2d at 158); *see* Lloyd Doggett & Michael J. Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest*, 69 Tex. L. Rev. 643, 673-74 (1991). In performing the balancing test, the trial court may consider, among other things, oral testimony, products of discovery, and affidavits filed by the parties. *See* Tex. R. Civ. P. 76a(4), 120a(3)*; Boardman*, 872 S.W.2d at 299.

### III.    EXHIBITS 570 AND 573 ("Ford documents")

Ford argues that it met its burden under rule 76a and that the trial court abused its discretion in denying Ford's motion to seal the Ford documents. The Marroquins contend that (1) the Ford documents are not trade secrets or that Ford waived their trade-secret status; (2) Ford failed to demonstrate that the Ford documents do not affect the general public health or safety; (3) Ford failed to overcome the presumption of openness; and (4) less restrictive means, i.e. redaction, would adequately and effectively protect Ford's serious, substantial and specific interest in the Ford documents. Assuming without deciding that the Ford documents are trade secrets, we agree with the Marroquins that Ford did not carry its burden under rule 76a. *See* Tex. R. Civ. P. 76a(1).

Trade-secret status satisfies only the first factor in the sealing standard, and the trial court must weigh that interest against the presumption of openness and any probable adverse affects of sealing on the general public health and safety. *See In re Cont'l Gen.*

5

*Tire, Inc.*, 979 S.W.2d 609, 614 (Tex. 1998) ("That a document contains trade secret information is a factor to be considered in applying [the] sealing standard.") (citing *Marshall*, 829 S.W.2d at 158); *Lapray*, 75 S.W.3d at 674-75 (Tex. App.–Beaumont 2002, no pet.) (rejecting the argument that if a document is a trade secret, it must be sealed as a matter of law) (citing *Cont'l Gen. Tire*, 979 S.W.2d at 614). Rule 76a requires that the trade secret interest must clearly outweigh the other prescribed considerations and that there must be no less restrictive means to protect the trade secret. *See* TEX. R. CIV. P. 76a(1).

Rule 76a presumes that court records are open. *Id.*; *see Boardman*, 872 S.W.2d at 299. "'What happens in the court room is public property . . . . There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit or censor events which transpire in proceedings before it.'" *Express-News Corp. v. Spears*, 766 S.W.2d 885, 890 (Tex. App.–San Antonio 1989) (ellipses in original) (Cadena, C.J., dissenting) (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)). Rule 76a "states the heavy burdens which a movant must satisfy in order to secure an order sealing court records." *Boardman*, 872 S.W.2d at 299.

The Ford documents were produced under an agreed-to "Stipulated Protective Order," which provided, among other things, that

> This protective order shall not apply to the disclosure of Protected Documents or the information contained therein at the time of trial, through the receipt of Protected Documents into evidence or through the testimony of witnesses. The closure of trial proceedings and sealing of the record of a trial involve considerations not presently before the Court. These issues may be taken up as a separate matter upon the motion of any of the parties at the threshold of the trial.

At the outset of the trial, Ford announced, "Not ready," pending the trial court's ruling on Ford's "Motion to Close Courtroom During Limited Portions of Trial and to Seal Part of

6

the Record Containing Trade Secrets" ("Motion to Close Courtroom"). Prior to the Ford documents being offered into evidence, the Marroquins agreed that, in the interest of judicial efficiency, the Ford documents could be entered into evidence under a temporary seal pending further argument regarding sealing the documents. The trial court declined to close the courtroom but agreed to instruct the reporter to not "release any document that [Ford considers] to be proprietary to anybody other than the attorneys in this trial . . . until such time as I decide and I get to hear all your arguments and you make your record and I make my rulings."

The Ford documents were introduced following a lengthy video-taped deposition of Douglas P. Walczak, formerly the brand manager of the Ford Expedition. The deposition was played to the jury in open court. During that deposition, the Marroquins' attorney and Walczak referenced and discussed different sections of the Ford documents. The Marroquins asked questions about specific findings in the Ford documents, and Walczak answered these questions. For example, Walczak discussed the gender break-down of respondents and a few areas in which Ford sport utility vehicles were rated lower than its competition. Following this testimony, the Marroquins offered the Ford documents into evidence. Ford stated, "No objection. But these [Ford documents] again need to be handled under the agreement that we had for protective [sic] documents." The trial court admitted the Ford documents under the agreement.

At no time during or after the playing of Walczak's video-taped deposition did Ford renew its request for the trial court to close the courtroom nor did Ford, at this time, object to the trial court's refusal to close the courtroom. Additionally, Ford did not ask the trial court to instruct the jury and any other non-parties present in the courtroom to not discuss

the Ford documents or contents thereof with anyone.[5] Ford does not allege error regarding the trial court's decision on Ford's request to close the courtroom during the presentation of protected documents.

On appeal, the Marroquins argue that this chain of events resulted in Ford's forfeiting trade-secret status, if the Ford documents qualified as trade secrets. Assuming without deciding that the Ford documents are trade secrets and as such rise to the level of "a specific, serious and substantial interest," we nonetheless believe that because (1) Ford does not complain on appeal about the trial court's denial of its Motion to Close Courtroom; (2) Ford did not seek an instruction prohibiting the jury and other non-parties from discussing the Ford documents beyond the setting of the trial; and (3) specific findings in the Ford documents were discussed in open court and were admitted without objection, albeit under a temporary seal, Ford's interest in maintaining secrecy does not "*clearly* outweigh" the presumption of openness.[6] *See* TEX. R. CIV. P. 76a(1) (emphasis added); *see, e.g.*, TEX. R. EVID. 507 (noting that when disclosure of trade secrets is

---

[5] Ford does not direct this Court to any request it made wherein it sought to have the trial court instruct the jurors or other non-parties to not discuss the Ford documents with anyone outside the setting of the trial. *See* TEX. R. APP. P. 38.1(i). The Marroquins provided the trial court with affidavits from non-parties and a juror asserting that they never received such an instruction. In its reply brief, Ford frames the Marroquin's argument as claiming that Ford waived its trade secret status by not seeking this instruction. Because we assume without deciding that the Ford documents are trade secrets and Ford does not challenge the factual accuracy of the affidavits, we take the facts stated therein as true. *See id.* 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

[6] In dicta, the San Antonio Court of Appeals stated, "[Rule 76a] expressly recognizes that the need to protect trade secrets and other proprietary information can overcome the presumption of openness." *Clear Channel Commc'n, Inc. v. United Servs. Auto. Ass'n*, 195 S.W.3d 129, 137 (Tex. App.–San Antonio 2006, no pet.). The question in that case was whether the trial court's protective order sealing certain documents labeled "Confidential Information" was valid in light of rule 76a. *Id.* at 130. Significantly, no portion of the "Confidential Information" was admitted into evidence or otherwise given to the jury. *Id.* at 131 (noting that the appeal arose from the trial court's entering a protective order following an evidentiary hearing). Under the facts of the case before us, the language from *Clear Channel* is not persuasive authority. *See Nichols v. Catalano*, 216 S.W.3d 413, 416 (Tex. App.–San Antonio 2006, no pet.) (stating that obiter dicta is neither persuasive nor binding authority) (quoting *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.–Houston [14th Dist.] 1999, pet. denied) (defining "obiter dicta")).

8

ordered, "the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require."); *Burlington N. R.R. Co.*, 905 S.W.2d at 686 (affirming trial court's ruling that the movant's interest in confidential documents, admitted into evidence and presented to the jury, did not outweigh presumption of openness).

In addition to its burden to prove that its interest overcame the presumption of openness, Ford also had the burden to demonstrate that no less restrictive means than sealing the Ford documents would adequately and effectively protect its interest. *See* TEX. R. CIV. P. 76a(1); *Compaq Computer Corp.*, 75 S.W.3d at 675. In his affidavit, Walczak stated, "In order to protect Ford's proprietary, commercially sensitive information, the [Ford documents] should be sealed for all future purposes." Ford argues that the suggestion that its interest could be protected through any method short of sealing the entire Ford documents is "unrealistic in the extreme." Beyond Walczak's affidavit and Ford's blanket assertions that a total seal is necessary, Ford did not offer any additional testimony or evidence regarding whether the Ford documents could be redacted while still protecting its interest.

As Ford recognizes, the Ford documents contain marketing information regarding not only its own vehicles but also information to some of its competitors' vehicles' strengths and weaknesses. Walczak noted that,

> if Ford's competitors were to gain access to these materials, they would unfairly gain a significant competitive advantage. *Such an advantage would consist of using Ford's research and work to undermine Ford's existing advertising and marketing campaigns.* Furthermore, Ford's competitors would be unjustly enriched by obtaining at no cost the research and analysis Ford expended significant resources to obtain.

(Emphasis added.) During the hearing on Ford's Motion to Close Courtroom and while

9

discussing one of the Ford documents, Ford stated, "It's information that J.D. Power & Associates has gone out, has done their research, pulled this information from customers, from drivers, and specific information about their feelings of their cars, their car's performance, and that information was compiled and it was sold to Ford for Ford's use." However, we note that Ford no longer manufactures the Expedition model in question.

Ford did not specifically indicate whether redacting the information in the Ford documents "regarding Ford's own strengths and weaknesses" while leaving unchanged and unsealed data concerning its competitors' products would still protect its interests. *See Compaq Computer Corp.*, 75 S.W.3d at 675 ("[T]he issue is not whether *there was* a 'less restrictive' means available other than sealing to protect Compaq's interests, but whether Compaq showed *there was no* 'less restrictive' means available.") (emphasis in original). Therefore, we believe that Ford failed to carry its burden to demonstrate that no less restrictive means than completely sealing the Ford documents would adequately and effectively protect its interest. *See id.*; *see also Monsanto Co. v. Davis*, No. 10-02-00208-CV, 2004 WL 859159, *1 (Tex. App.–Waco Apr. 21, 2004, no pet.) (mem. op.).

We hold that because Ford did not overcome the presumption of openness and failed to demonstrate that no less restrictive means would protect its interest, the trial court did not abuse its discretion by denying Ford's motion to seal the Ford documents. We overrule Ford's issue on appeal.

## IV.   EXHIBIT 844 ("Volvo document")

We turn now to Volvo's motion to seal the Volvo document, exhibit 844, also know

as "FKB Complete Vehicle" and which we will refer to as the "Volvo document" for the sake

of clarity.  A Volvo vehicle was not involved in the fatal accident giving rise to the underlying

litigation.  Volvo intervened in the lawsuit when the Marroquins sought, through various

motions, to remove the Volvo document from the agreed protective order under which Ford

had produced it.

The "Stipulated Sharing Confidentiality Protective Order Regarding Volvo

Documents" provides in relevant part:

8.      To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with the Protected Documents or information.

9.      All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of the action to which it pertains, an indication of the nature of the contents of such sealed envelope or other container, the phrase "Subject to Protective Order," and a statement substantially in the following form:  This envelope or container shall not be opened without order of the Court, except by officers of the Court and counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container.

10.     Any court reporter or transcriber who reports or transcribed [sic] testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

The Volvo document is the "cook book" for Volvo's development of its first-ever sport utility vehicle, now known as the XC90. The Volvo document was admitted over Ford's objections on hearsay and relevance grounds; however, the trial court did admit the Volvo document per Ford's reminder that it is subject to the agreement for handling proprietary documents. The Marroquins and the sponsoring witness discussed the Volvo document in general terms as "some sort of test or design requirements," including an "ejection mitigation component test" to test ways "to improve rollover performance in passive safety."

After briefs were filed in the present appeal, the supreme court issued the mandamus and foreclosed the majority of the Marroquin's arguments. *In re Ford Motor Co.*, 211 S.W.3d at 298. For example, the Marroquins extensively argued that the Volvo document lost its trade-secret status due to the events in the Duncan litigation. *Id.* at 297. The supreme court characterized this assertion as "legally untenable and prudentially unsound." *Id.* at 298.

Volvo argues that, as a trade secret, the Volvo document is worthy of protection under rule 76a. *See* TEX. R. CIV. P. 76a. "A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). To determine whether a trade secret exists, we utilize the six factors from the Restatement of Tort's test. *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (quoting Restatement (Third) of Unfair Competition § 39 cmt. d (1995) (listing the following six factors: (1) the extent to which the information is known outside of the business; (2) the extent to which the secret is known by the business's employees and others involved with it; (3) the extent of the measures the business had

taken to secure the information; (4) the information's value to the owner and its competitors; (5) the amount of effort and money spent by the business to develop the information; and (6) the ease or difficulty others would encounter in acquiring or duplicating the information)). Based on the following discussion, we conclude that the Volvo document is a trade secret and turn to an evaluation of the trial court's balancing of the interests under rule 76a(1). *See* TEX. R. CIV. P. 76a(1).

In support of its motion to seal, Volvo produced the affidavit of Sten Persson, a defect investigation manager for Volvo and a Volvo employee since 1982. This affidavit indicated that the Volvo document included internal and proprietary specifications,[7] including "the totality of the engineering requirements to be met for testing, the test method to be used to meet those requirements and comments regarding those tests." According to Persson, the Volvo document "specifically identif[ies] the order and manner in which the vehicle as a whole will be tested and also identif[ies] what engineering specifications should be applied to the tests." "Information contained in the [Volvo document] could be used by Volvo's competitors to save substantial development expenditures associated with evaluation and development without compensating Volvo for the expense it incurred in studying, processing, and testing its vehicles," thereby placing Volvo at a competitive disadvantage. Volvo's competitive edge derives from its years of being a leader in the manufacture, design, and testing of passenger vehicles.

Persson stated that the dissemination of Volvo testing techniques and test programs

---

[7] According to the Persson affidavit, stamped on the front page of the Volvo document is the following notice, "NOTICE, THIS DOCUMENT CONTAINS PROPRIETARY INFORMATION AND SHALL NOT BE USED OR REPRODUCED OR ITS CONTENTS DISCLOSED IN WHOLE OR IN PART, WITHOUT THE PRIOR WRITTEN CONSENT OF THE VOLVO CAR CORPORATION."

would not only disadvantage Volvo vis-a-vis its competitors but would also "provide information to manufacturers of after-market accessory products and spare parts and to suppliers of tooling and other industry devices [sic] which information has been acquired by Volvo after many years and after the expenditure of substantial amounts of money." Persson noted that the after-market parts industry is also highly competitive, and that "[i]n order to undersell the manufacturer, such parts are often of an inferior quality and can potentially pose a safety risk to prospective purchasers." Persson also quantified the cost of the crash testing that is part of the testing and development of Volvo vehicles at $35,000 to $60,000 plus the cost of vehicle, but "Volvo does not publish or otherwise voluntarily disclose the specific test procedures and methods used in its testing of automobiles," which procedures and methods are only partially included in the publicly available government regulations and Society of Automotive Engineers recommended practices.

Persson further emphasized the importance of keeping testing documents, including the Volvo document, secret by stating

> The test reports provide insight to the method whereby an engineering assignment may be resolved. The report may be a link in the chain of development necessary to achieve an improvement in design and manufacture. Such a link is based on past experience. The capability of a competitor to avoid the necessity of developmental endeavors which include avenues which may have to be abandoned in order to achieve the solution to an engineering assignment, results in a savings of time and money results in a reduction of lead time necessary to incorporate the solution into the product. This benefit to competitors would diminish the competitive advantage held by Volvo at the present time. Moreover, the knowledge by a competitor of developmental approaches not pursued may spark a previously unthought of solution to an engineering assignment which would otherwise not be readily available.

> The test reports may contain information on production parts and on experimental parts. The same test may provide information that relates to various components, much of which is solely within the knowledge of Volvo

14

because of its ongoing development program. Accordingly, information relating to experimental parts may affect the design of future models. If such information is disseminated, it would permit competitors to use such information as a basis for their own future development.

The availability of test reports could permit competitors to estimate the amount of funds, [sic] expended by Volvo in research and development relevant to the efforts of the competitors. This knowledge in and of itself may well place a competitor in a position to determine whether its own research program should be altered and permit the competitor to estimate the financial capability of Volvo for the future development.

Regarding the Volvo document, the Marroquins argued, "Neither Ford nor Volvo offered any evidence for the trial court to weigh the adverse effect of hiding the evidence of an unreasonable [sic] dangerous product sold across Texas and America." Of course, the Volvo document concerned the development of a vehicle not involved in the underlying lawsuit and was offered to demonstrate a safer alternative design to the Expedition involved in the underlying lawsuit. As Volvo notes, "[T]here was no finding or any evidence [in the underlying lawsuit] to suggest that the 2003 Volvo XC 90 made the basis of [the Volvo document] was defective."

Volvo asserts that the entirety of the Volvo document should be sealed because releasing any portion would give its competitors "information regarding design, development, manufacture, testing techniques, and test programs conducted by Volvo for its vehicles to the competitive disadvantage of Volvo." As the already quoted portions of Persson's affidavit indicate, the entire Volvo document concerns highly sensitive information regarding the testing requirements and procedures used by Volvo to develop a brand new body style and vehicle model. Should Volvo's competitors learn of any portion of the Volvo document, Volvo could arguably lose its leadership position in the industry.

Because (1) Volvo was not a party to the case; (2) the vehicle involved in the

15

underlying law suit was not a Volvo vehicle; (3) the Volvo document was the "cook book" for the development of a brand new model and body type of Volvo vehicle and also a trade secret; (4) unlike the Ford documents, the contents of the Volvo document were discussed only cursorily in open court; (5) there was no finding or evidence indicating that the Volvo XC90, the subject of the Volvo document, was in any way defective or unsafe; and (6) releasing any portion of the Volvo document could arguably destroy Volvo's competitive advantage, we conclude that Volvo carried its burden under rule 76a. *See* TEX. R. CIV. P. 76a(1). Thus, Volvo demonstrated that its "specific, serious and substantial interest which clearly outweighs" the "presumption of openness" and "any probable adverse effect that sealing will have upon the general public health or safety" and that there is "no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted." *Id.* As such, we conclude that the trial court abused its discretion. We sustain Volvo's issue on appeal.

## V.   CONCLUSION

Having determined that the trial court did not abuse its discretion in denying Ford and Volvo's motion to seal the Ford documents, we affirm that portion of the trial court's order. Having determined that the trial court did abuse its discretion when it denied Ford and Volvo's motion to seal the Volvo document, we reverse that portion of the trial court's order and remand this case to the trial court for entry of an order in line with this opinion.

PER CURIAM

Memorandum Opinion delivered and
filed this the 5th day of November, 2009.

16