# THE COURT OF CHANCERY OF THE STATE OF DELAWARE

FREEMAN FAMILY LLC,

     Plaintiff,

     v.

PARK AVENUE LANDING LLC,

     Defendant.

C.A. No. 2018-0683-TMR

## MEMORANDUM OPINION

Date Submitted: January 31, 2019
Date Decided: April 30, 2019

Patricia L. Enerio and Jamie L. Brown, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; *Attorneys for Plaintiff*.

Thad J. Bracegirdle and Scott B. Czerwonka, WILKS LUKOFF & BRACEGIRDLE, LLC, Wilmington, Delaware; Adam K. Derman and Brian P. O'Neill, CHIESA SHAHINIAN & GIANTOMASI PC, West Orange, New Jersey; *Attorneys for Defendant*.

**MONTGOMERY-REEVES, Vice Chancellor.**

In this action, the parties dispute whether a member of a limited liability company is entitled to advancement under the company's operating agreement. The operating agreement at issue provides that members shall receive advancement if they are made party to an action by reason of their status as a member. The plaintiff, a member of the company, is defending a federal lawsuit in New Jersey brought by the company's managing member, relating to the plaintiff's call right under the operating agreement. The plaintiff argues that the federal lawsuit arises because of the plaintiff's status as a member, and therefore, the company must provide advancement. The company responds that although the Delaware Limited Liability Company Act allows for broad indemnification and advancement, the parties here incorporated language from the Delaware General Corporation Law, and therefore, the Court should look to corporate advancement cases. Under those cases, the Court must examine whether the party seeking advancement was made a party to the action by reason of the fact that the party seeking advancement was acting in his or her official capacity. The company argues that the action in New Jersey relates to a personal right, not to the member's official capacity; therefore, the member is not entitled to advancement.

The parties cross-move for judgment on the pleadings. In this opinion I must answer two questions. First, does corporate case law apply because the advancement provision in the limited liability company's operating agreement mirrors the

1

corporate statute?  Second, does the New Jersey action arise by reason of the fact that the party seeking advancement acted in its official capacity?  As to the first question, I hold that corporate case law does apply by analogy.  As to the second question, I hold that the party seeking advancement is entitled to it.  Thus, I grant judgment on the pleadings in favor of the plaintiff.

## I.     BACKGROUND

The parties cross-move for judgment on the pleadings.  "As is the case when ruling on any motion addressed solely to the pleadings, . . .  the following facts are drawn exclusively from the complaint."[1]  I also "consider, for carefully limited purposes, documents integral to or incorporated into the complaint by reference."[2]

On May 1, 2008, Plaintiff Freeman Family LLC ("Freeman Family") entered into the First Amended Limited Liability Company Agreement of Park Avenue Landing LLC (formerly known as C.O.S. Properties LLC) (the "Operating Agreement").[3]  The other parties to the Operating Agreement were the managing

---

[1]     *McMillan v. Intercargo Corp.*, 768 A.2d 492, 499 (Del. Ch. 2000) (considering a motion for judgment on the pleadings under Ct. Ch. R. 12(c)).

[2]     *Id.* at 500 (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1995)).

[3]     Compl. ¶ 9.

member, non-party Hugo Neu Corporation ("Hugo Neu"); two entities affiliated with Hugo Neu; and non-party Andrew Feurstein.[4]

When Freeman Family entered into the Operating Agreement, Defendant Park Avenue Landing LLC ("Park Avenue" or the "Company") owned property in New Jersey (the "Original Property"), parts of which it wanted to exchange for other property in New Jersey (the "Exchange Property") owned by Liberty Harbor Holdings, L.L.C. (the "Property Exchange").[5] Freeman Family agreed to cause Robert Freeman, its owner, to "use his best efforts on behalf of the Company" to effect the Property Exchange and support the Company in other ways.[6] In exchange, Freeman Family received equity in the Company.[7]

The Operating Agreement contains two call rights (collectively, the "Call Rights") that allow Hugo Neu to buy back Freeman Family's equity in two circumstances. The first circumstance arises if, after December 31, 2008, the

---

[4] *Id.*; *id.* at 3 n.1.

[5] *Id.* ¶ 10; *id.* Ex. 1, at 1 ("WHEREAS, the Company owns certain property (the 'Original Property') located in New Jersey, portions of which it desires to exchange for other property (the 'Exchange Property'[)] located in New Jersey and owned by Liberty Harbor Holdings, L.L.C. . . .").

[6] *Id.* ¶ 11 (quoting *id.* Ex. 1 § 18(b)).

[7] *Id.* ¶ 12; *id.* Ex. 1, at 1 ("WHEREAS, the Company has agreed with [Andrew Feuerstein] and [Freeman Family LLC] to issue them membership interests in the Company as described below in consideration of their future efforts relating to acquiring and developing [land].").

3

Company has not completed the Property Exchange or the redevelopment plan for the Exchange Property has not been modified to allow a residential development of at least 677 units.[8] The second circumstance arises if, as of October 31, 2010, no reputable developer is ready, willing, and able to participate in development of the Exchange Property.[9] Furthermore, the Call Rights are extendable at the Company's option.[10]

---

[8] *Id.* Ex. 1 § 19 ("At any time after December 31, 2008 if either (i) portions of the Original Property have not been exchanged for the Exchange Property or (ii) the [area development plan] has not been modified so as to allow a residential development of 677 units on the [land] or the Company or its designee has not been designated . . . as the approved developer . . . , then [Hugo Neu] (and/or its designees) shall have the right to purchase from [Freeman Family] [its] Percentage Interest[] for One Dollar ($1), plus any additional capital contribution.").

[9] *Id.* ("At any time after October 31, 2010, unless prior to such date, [Freeman Family], without utilizing the services of a broker to whom the Company would have been obligated to pay a brokerage fee, found a reputable real estate developer reasonably acceptable to the Company who was ready, willing and able to enter into a joint venture, partnership, development, or similar agreement with the Company with respect to [the Exchange Property] on terms reasonably acceptable to the Managing Member (on behalf of the Company) . . . [I]f no Developer Agreement has been entered into prior to said date, [Hugo Neu] and/or its designee(s) shall have the right to purchase from [Freeman Family] its Percentage Interest for a sum equal to the aggregate of (x) one half of [Freeman Family's] Initial Capital Contribution and (y) any additional capital contribution made.").

[10] *Id.* ("If at any time, in the reasonable judgment of the Managing Member, Market Conditions are inappropriate for a transaction of the type described above, the Managing Member may so advise [Freeman Family] and the time periods set forth in this Section shall be automatically extended by a period equal to the time between delivery of such notice and the date on which the Managing Member notifies [Freeman Family] that Market Conditions are again appropriate for the Company to consider such a transaction.").

Hugo Neu attempted to exercise the Call Rights on November 7, 2016; Freeman Family resisted, arguing that Hugo Neu had waived those rights by failing to exercise them.[11] On January 18, 2017, Hugo Neu filed its complaint in *Hugo Neu Corp. v. Freeman Family LLC* (the "New Jersey Action"),[12] which is pending in the United States District Court for the District of New Jersey.[13] In the New Jersey Action, Hugo Neu asserts claims against Freeman Family to enforce the Call Rights.[14] Freeman Family brought counterclaims in the New Jersey Action, seeking declaratory judgment in its own favor as to the validity of the Call Rights.

On September 17, 2018, Freeman Family filed its Verified Complaint for Advancement (the "Complaint"). Freeman Family brings this action to obtain advancement of legal fees arising from the New Jersey Action under the terms of the Operating Agreement.[15] Section 14(a) of the Operating Agreement, which discusses indemnification, states that

> [t]he Company shall indemnify any person (each, an "Indemnitee") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding brought by or against the

---

[11]    *Id.* ¶¶ 18-19.

[12]    *Hugo New Corp. v. Freeman Family LLC*, Case 2:17-cv-00373-MCA-SCM.

[13]    Compl. ¶ 2.

[14]    *Id.* Ex. 2, at 1.

[15]    *Id.* ¶ 1.

5

Company, or otherwise . . . including, without limitation, any action by or in the right of the Company to procure a judgment in its favor, by reason of the fact that such Indemnitee is or was a Managing Member, Member or an officer of the Company.[16]

Section 14(b) of the Operating Agreement, which discusses advancement, adds that

[t]he Company shall pay expenses incurred by any Indemnitee in defending any action, suit or proceeding described in Section 14(a) in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Indemnitee to repay such advance if it shall ultimately be determined that such Indemnitee is not entitled to be indemnified by the Company pursuant to this Section 14.[17]

On November 8, 2018, Freeman Family filed its Motion for Judgment on the Pleadings. On December 7, 2018, Park Avenue filed its Cross-Motion for Judgment on the Pleadings. On January 8, 2018, I heard oral argument on the Cross-Motions for Judgment on the Pleadings.

## II.     ANALYSIS

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[18] "When considering a Rule 12(c) motion, the court must accept well-pled facts in the complaint as true and view

---

[16]     *Id.* Ex. 1 § 14(a).

[17]     *Id.* Ex. 1 § 14(b).

[18]     Ct. Ch. R. 12(c).

6

those facts in the light most favorable to the nonmoving party."[19]  "A motion for judgment on the pleadings will be granted if no material issue of fact exists and the moving party is entitled to judgment as a matter of law."[20]  "A court may not grant the motion unless it appears beyond doubt that the claimant can prove no set of facts in support of its claims which would entitle it to relief."[21]  "Advancement cases are particularly appropriate for resolution on a paper record, as they principally involve the question of whether claims pled in a complaint against a party . . . trigger a right to advancement under the terms of a corporate instrument."[22]

The cross-motions at issue here turn on the interpretation of the Operating Agreement.  "When analyzing an LLC Agreement [or Operating Agreement], a court applies the same principles that are used when construing and interpreting other contracts."[23]  Delaware follows the objective theory of contracts.  "Under

---

[19]    *Fiat N. Am. LLC v. UAW Retiree Med. Benefits Tr.*, 2013 WL 3963684, at *7 (Del. Ch. July 30, 2013) (citing *Rag Am. Coal Co. v. AEI Res., Inc.*, 1999 WL 1261376 (Del. Ch. Dec. 7, 1999)).

[20]    *Id.* (citing *Credit Suisse Secs. (USA) LLC v. W. Coast Opportunity Fund, LLC*, 2009 WL 2356881, at *3 (Del. Ch. July 30, 2009)).

[21]    *Id.* (quoting *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, 2009 WL 3465984, at *7 (Del. Ch. Oct. 28, 2009)).

[22]    *DeLucca v. KKAT Mgmt., LLC*, 2006 WL 224058, at *6 (Del. Ch. Jan. 23, 2006).

[23]    *Godden v. Franco*, 2018 WL 3998431, at *8 (citing *Aloha Power Co. v. Regenesis Power, LLC*, 2017 WL 6550429, at *5 n.34 (Del. Ch. Dec. 22, 2017); *RED Capital Inv. L.P. v. RED Parent LLC*, 2016 WL 612772, at *2 (Del. Ch. Feb. 11, 2016);

Delaware law, courts interpret contracts to mean what they objectively say. This approach is longstanding and is motivated by grave concerns of fairness and efficiency."[24]

> Because Delaware adheres to the objective theory of contract interpretation, the court looks to the most objective indicia of that intent: the words found in the written instrument. As part of this initial review, the court ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer.[25]

"Standing in the shoes of an objectively reasonable third-party observer, if the court finds that the terms and language of the agreement are unmistakably clear, then the court should look only to the words of the contract to determine its meaning and the parties' intent."[26]

When the "meaning [of a contract] is unambiguous and the underlying facts necessary to its application are not in dispute, judgment on the pleadings is an

---

*Mickman v. Am. Int'l Processing, LLC*, 2009 WL 2244608, at *2 (Del. Ch. July 29, 2009)).

[24] *Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at *1 n.1 (Del. Ch. Nov. 8, 2007) (citing Joseph M. Perillo, *The Origins of the Objective Theory of Contract Formation and Interpretation,* 69 Fordham L. Rev. 427, 477 (2000)).

[25] *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008) (footnotes omitted).

[26] *Dittrick v. Chalfant*, 948 A.2d 400, 406 (Del. Ch. 2007).

appropriate procedural device for resolving the dispute."[27]  "When ruling on dueling Rule 12(c) motions that turn on an issue of contract construction, the Court must deny both motions if each has advanced reasonable but conflicting readings of the [contract in dispute], or, in other words, if the contract provision in question is ambiguous."[28]

## A.  Corporate Case Law Applies

First, I must determine the applicability of corporate case law to this non-corporate context.  As I discuss above, Delaware limited liability companies are "creatures of contract," and typically in the limited liability company ("LLC") context, I would apply principles of contract interpretation to construe the Operating Agreement's terms.  The Delaware Limited Liability Company Act (the "LLC Act") provides that "[i]t is the policy of this chapter to give maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."[29]  "[T]he parties have broad discretion to use an LLC agreement to define the character of the company and the rights and obligations of its members."[30]

---

[27]  *CorVel Enter. Comp, Inc. v. Schaffer*, 2010 WL 2091212, at *1 (Del. Ch. May 19, 2010).

[28]  *Gibraltar Private Bank & Tr. Co. v. Bos. Private Fin. Hldgs., Inc.*, 2011 WL 6000792, at *2 (Del. Ch. Nov. 30, 2011) (citation omitted).

[29]  6 *Del. C.* § 18-110(b).

[30]  *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 880 (Del. Ch. 2009).

Importantly, the contractual freedom that the LLC Act creates allows drafters of an LLC agreement or operating agreement to adopt concepts from the laws of other entities.

> Using the contractual freedom that the LLC Act bestows, the drafters of an LLC agreement can create an LLC with bespoke governance features or design an LLC that mimics the governance features of another familiar type of entity. The choices that the drafters make have consequences. If the drafters have embraced the statutory default rule of a member-managed governance arrangement, which has strong functional and historical ties to the general partnership (albeit with limited liability for the members), then the parties should expect a court to draw on analogies to partnership law. If the drafters have opted for a single managing member with other generally passive, non-managing members, a structure closely resembling and often used as an alternative to a limited partnership, then the parties should expect a court to draw on analogies to limited partnership law. If the drafters have opted for a manager-managed entity, created a board of directors, and adopted other corporate features, then the parties to the agreement should expect a court to draw on analogies to corporate law.[31]

The Operating Agreement in the case before me states that

> [t]he Company shall indemnify any person (each, an "<u>Indemnitee</u>") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding brought by or against the Company, or otherwise . . . including, without limitation, any action by or in the right of the Company to procure a judgment in its favor, by reason of the fact that such

---

[31] *Obeid v. Hogan*, 2016 WL 3356851, at \*6 (Del. Ch. June 10, 2016) (citations omitted).

> Indemnitee is or was a Managing Member, Member or an officer of the Company.[32]

In discussing advancement, it adds that

> [t]he Company shall pay expenses incurred by any Indemnitee in defending any action, suit or proceeding described in Section 14(a) in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Indemnitee to repay such advance if it shall ultimately be determined that such Indemnitee is not entitled to be indemnified by the Company pursuant to this Section 14.[33]

By comparison, 8 *Del. C.* § 145(a) and (b) state that "[a] corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action . . . by reason of the fact that the person is or was a director, officer, employee or agent of the corporation."[34] Thus, the parties chose to use language that is nearly identical to the corporate statute. The logical conclusion for why they did that is to import a predictable and well-defined rule from corporate statutory and case law.

Freeman Family argues against application of corporate case law on the basis of four Delaware cases: *Hyatt v. Al Jazeera American Holdings II, LLC*;[35] *Branin v.*

---

[32] Compl. Ex. 1 § 14(a).

[33] *Id.* Ex. 1 § 14(b).

[34] 8 *Del. C.* § 145(a), (b).

[35] 2016 WL 1301743 (Del. Ch. Mar. 31, 2016).

*Stein Roe Investment Counsel, LLC*;[36] *Bernstein v. TractManager, Inc.*;[37] and

*Costantini v. Swiss Farm Stores Acquisition LLC*.[38]  Each case supports the notion

that the parties have contractual freedom when they write an operating agreement

and that they may choose to adopt corporate case law.

In *Hyatt*, Vice Chancellor Glasscock considered the advancement rights of

directors and officers who sought to assert their rights against the corporation that

acquired their employer, an LLC.[39]  Vice Chancellor Glasscock wrote that

> [t]he parties also agree that, while [the company] was a limited liability company not subject to the Delaware General Corporate Law ("DGCL"), the Operating Agreement confers advancement to former officers and directors that incur expense "by reason of the fact" that he was a former officer and director—a standard that tracks the language of Section 145 of the DGCL that grants a corporation the authority to provide indemnification. Based on the clear language in those sections of the Operating Agreement, and bolstered by the fact that both parties utilized this Court's discussions of Section 145 in their briefing, I conclude that the parties intended to import the strictures of Section 145.  Accordingly, my determination of the Plaintiffs' right to advancement is informed by the case law interpreting that section.[40]

---

[36]    2014 WL 2961084 (Del. Ch. June 30, 2014).

[37]    953 A.2d 1003 (Del. Ch. 2007).

[38]    2013 WL 6327510 (Del. Ch. Dec. 5, 2013).

[39]    *Hyatt*, 2016 WL 1301743, at \*1.

[40]    *Id.* at \*7 (citations omitted).

Thus, *Hyatt* stands for the proposition that in some circumstances, parties to a contract can choose to import ideas from corporate case law. Freeman Family notes that *Hyatt* addresses directors or officers of the LLC, not members like Freeman Family.[41] While this is true, the fact that *Hyatt* concerns directors or officers does not create any restriction limiting the freedom of parties to contract for corporate case law concepts in other circumstances.

In *Branin*, Vice Chancellor Noble considered the indemnification provision of an operating agreement, which originally extended to the limit the LLC Act allows but which the defendants modified to be much more restrictive when they learned of the case against the plaintiff.[42] In considering a motion for judgment on the pleadings, Vice Chancellor Noble noted that "the corporate indemnification rights at issue in [corporate cases] do not necessarily or automatically resolve [the plaintiff's] entitlement to indemnification under a limited liability company agreement."[43] More to the point, however, the Vice Chancellor wrote that

> case law must be used cautiously in searching for the intent of the parties for an indemnification provision in a limited liability company agreement. The parties are largely free to draft an indemnification provision as they see fit. Yet, when the agreement is silent on a particular

---

[41]    Pl.'s Reply Br. 13.

[42]    *Branin*, 2014 WL 2961084, at *1.

[43]    *Id.* at *6 (citing *Salaman v. Nat'l Media Corp.*, 1992 WL 808095 (Del. Super. Oct. 8, 1992)).

> issue, well-settled principles of indemnification law drawn from 8 *Del. C.* § 145 may be helpful in the analysis because sophisticated parties can safely be presumed to be familiar with the policies and precepts embedded generally in the corporate law. Nevertheless, the parties' freedom to contract must be respected.[44]

Thus, *Branin* stands both for the importance of freedom of contract in developing and interpreting the language of LLC indemnification agreements and for the proposition that parties may intend to draw on corporate case law for certain aspects of their agreements.

In *Bernstein*, Vice Chancellor Lamb considered the advancement rights for directors and officers of an entity that converted from an LLC to a corporation.[45] In holding that the advancement rights for claims that arose while the entity was an LLC continued to be governed by the terms of the operating agreement, Vice Chancellor Lamb noted that "[l]imited liability companies and corporations differ in important ways, most pertinently in regard to indemnification: mandating it in the case of corporate directors and officers who successfully defend themselves, but leaving the indemnification of managers or officers of limited liability companies to private contract."[46] Thus, *Bernstein* stands for the proposition that the parties may

---

[44]      *Id.* at *6 n.43.

[45]      *Bernstein*, 953 A.2d 1003, at 1005.

[46]      *Id.* at 1010-11 (citations omitted).

14

contract for their desired indemnification rights, not that they cannot choose to adopt corporate indemnification rules. The same applies for advancement.

In *Costantini*, Vice Chancellor Glasscock confronted the question of whether language similar to 8 *Del. C.* § 145 imports corporate case law. Vice Chancellor Glasscock held that the unambiguous contractual language resolved the dispute, and he did not decide whether corporate case law applied.[47] Nonetheless, on a Motion for Reargument, Vice Chancellor Glasscock held that "[a]s the parties chose to import language into the Operating Agreement—'by reason of the fact'—from 8 *Del. C.* § 145(a)-(b), case law interpreting that statutory provision bears on my understanding of the Operating Agreement's language."[48] *Costantini* stands for the proposition that parties who import corporate law language should expect this Court to use corresponding case law.

In short, these cases show that parties are free to contract into corporate case law (or not) when they create LLCs, and courts will respect that choice.[49]

---

[47]      *Costantini*, 2013 WL 4758228, at *1.

[48]      *Id.* at *4.

[49]      Freeman Family cites two additional non-Delaware cases, *Sandt v. Energy Maintenances Services Group I, LLC*, 534 S.W.3d 626 (Tex. App. 2017), and *G2 FMV, LLC v. Thomas*, 24 N.Y.S.3d 235 (N.Y. App. Div. 2016), for the proposition that I should not apply corporate case law in the LLC context. Neither holds that corporate case law cannot be relevant in the LLC context; certainly, neither precludes my holding, as other jurists in this Court have held, that incorporation of

15

I hold that in the case before me the parties intended to import corporate case law as indicated by their decision to use contractual language that mirrors 8 *Del. C.* § 145.

## B. Freeman Family Was Acting by Reason of the Fact of Its Official Capacity

Having held that corporate case law applies, I must now determine if the Company owes Freeman Family advancement. The law of indemnification and advancement under 8 *Del. C.* § 145 is well-developed. "Under Delaware law, '[t]he 'by reason of the fact' standard, or the 'official capacity' standard, is interpreted broadly and in favor of indemnification.'"[50] "[I]f there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' that one was a corporate officer, without regard to one's motivation for engaging in that conduct."[51]

---

corporate law statutory language supports application of corporate case law to the interpretation of such language.

[50] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050 (Del. Ch. Aug. 22, 2014) (quoting *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *7 (Del. Ch. May 30, 2008)).

[51] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005).

"The requisite connection is established 'if the corporate powers were used or necessary for the commission of the alleged misconduct.'"[52]

Despite the Court's tendency to interpret indemnification and advancement clauses broadly, the clauses do have limits. One limit, which Park Avenue points to, relates to indemnification for personal obligations. "Section 145 will not apply when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation."[53]

Determining whether Freeman Family was acting by reason of the fact of its official capacity requires a determination of what Freeman Family's official capacity was. This is not as simple as when the party in question is a CEO or a director with defined duties. Here, Freeman Family is a member.[54] Nonetheless, the Operating Agreement makes clear Freeman Family's responsibilities. The Operating Agreement shows that Freeman Family was responsible for negotiating on the Company's behalf for the Property Exchange and finding reputable real estate

---

[52] *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 406 (Del. Ch. 2009) (quoting *Bernstein*, 953 A.2d at 1011).

[53] *Paolino*, 985 A.2d at 403.

[54] Compl. Ex. 1 § 6(a).

17

developers with whom the Company could develop the Exchange Property.[55] The Company's desire that these tasks be completed forms the purpose of Freeman Family's membership, and thus actions taken in support of discharging these duties comprise Freeman Family's official capacity.

The "[b]y reason of the fact" standard requires a causal relationship between the official capacity and the lawsuit. Here, the underlying case is about remedies Park Avenue has for Freeman Family's alleged failure to carry out its responsibilities under the Operating Agreement regarding the Property Exchange and property development under the Operating Agreement. The dispute in the New Jersey Action is based on whether Freeman Family discharged its official duties as defined in the Operating Agreement such that Park Avenue may exercise the Call Rights. This dispute fully implicates whether or not Freeman Family carried out its official duties. As a result, I hold that the New Jersey action satisfies the "by reason of the fact" or "official capacity" requirement.

Park Avenue cites five Delaware cases as "examples of cases denying advancement or indemnification claims because the underlying litigation involved a personal interest that lacked a sufficient connection to official duties."[56]

---

[55]     *Id.* Ex. 1 § 19.

[56]     Def.'s Answering Br. 17 (citing *Bernstein*, 953 A.2d 1003 (Del. Ch. 2007); *Cochran v. Stifel Fin. Corp*, 2000 WL 1847676 (Del. Ch. Dec. 13, 2000) (*rev'd in part on other grounds*, 809 A.2d 555 (Del. 2002)); *Lieberman v. Electrolytic Ozone, Inc.*,

18

Each of these cases provide examples of the court finding that a party seeking indemnification was acting in a covered capacity. The facts of these cases, however, all differ significantly from those before me. In these cases: The covered capacities were narrower (covering "directors and officers," for example, versus "member"). The underlying suits involved agreements other than those containing the indemnification or advancement right. The claimants played multiple roles at their respective organizations, some of which were not covered. None of that is true here.[57]

Park Avenue also argues that granting the advancement request would create a "circular oddity" where Freeman Family "could be ultimately entitled to indemnification against a final judgment requiring him to transfer his [equity] to

---

2015 WL 5035460 (Del. Ch. Aug. 31, 2015); *Dore v. Sweports, Ltd.*, 2017 WL 415469 (Del. Ch. Jan. 31, 2015); *Charney v. Am. Apparel Inc.*, 2015 WL 5313769 (Del. Ch. Sept. 11, 2015)).

[57] Park Avenue cites three additional non-Delaware cases: *Bensen v. American Ultramar Ltd.*, 1996 WL 435039 (S.D.N.Y. Aug. 2, 1996); *Minami International Corp. v. Clark*, 1992 WL 58838 (S.D.N.Y. Mar. 16, 1992); and *Tilden of New Jersey v. Regency Leasing Sys., Inc.*, 655 N.Y.S.2d 961 (N.Y. App. Div. 1997). In each, New York law rather than Delaware law applies, making them inapposite. Regardless, all of them discuss particular factual instances when a party seeking advancement was acting in a personal capacity; none of them preclude my holding that Freeman Family was acting in its official capacity. Instead, consistent with case law from this Court, I hold that Freeman Family was acting in its official capacity because it was carrying out its obligations derived from the Operating Agreement.

19

[Hugo Neu]."[58]  Park Avenue relies on *Cochran v. Stifel Financial Corp.*, where

then-Vice Chancellor Strine wrote that "to indemnify Cochran for judgments he

owes to [defendant] based on his breach of his contractual duties subverts the

contractual arrangement between Cochran and [defendant].  It leaves [the defendant]

without a genuine remedy against Cochran."[59]  This case, however, involves

advancement, where the issue of circularity is less relevant.  The notion of the

circular oddity

> has little purchase in the advancement context because the covered person is always obligated to repay the fees advanced if not ultimately entitled to indemnification, thereby eliminating the problem of circularity.  This does not mean that a *Cochran* argument cannot succeed in an advancement case.  It does mean that the claim for which the corporation seeks to avoid advancement must clearly involve a specific and limited contractual obligation without any nexus or causal connection to official duties.[60]

To resolve Park Avenue's arguments regarding the circular oddity would

require this Court to pre-judge the outcome of the New Jersey Action, which is

ongoing.  Such an exercise is inappropriate and unnecessary.  Park Avenue

acknowledges that the New Jersey Action could result in a finding that requires the

return of advanced funds and precludes any right to indemnification.  Further, as

---

[58]  Def.'s Answering Br. 21.

[59]  *Cochran*, 2000 WL 1847676, at *7.

[60]  *Paolino*, 985 A.2d at 406-07.

20

Freeman Family argues, these challenges are premature, and this Court can resolve the purported circular oddity issue if it actually arises.

## C.  Undertakings and Fees-on-Fees

Freeman Family seeks fees-on-fees for the successful prosecution of this action.  Park Avenue states that Freeman Family is not entitled to fees-on-fees because Freeman Family failed to provide an undertaking.

As a general matter, "[t]his Court has found that 'plaintiffs who succeed in prosecuting a request for advancement or indemnification are entitled to receive fees on fees.'"[61]  Park Avenue, however, "had no obligation to advance litigation expenses to [Freeman Family] until [it] had properly demonstrated a right to advancement.  [Park Avenue] conditioned advancement upon a [member's] undertaking to repay sums advanced if it later turned out that they were obligated to repay them."[62]  Section 14(b) of the Operating Agreement provides that the Company will pay advancement "upon receipt of an undertaking by or on behalf of" Freeman Family "to repay such advancement if it shall ultimately be determined

---

[61]    *Hyatt*, 2016 WL 1301743, at *11; *see also Sodano v. Am. Stock Exch. LLC*, 2008 WL 2738583, at *17 (Del. Ch. July 15, 2008) ("Having vindicated his right to advancement, [plaintiff] is entitled to fees on fees.").

[62]    *Wong v. USES Hldg. Corp.*, 2016 WL 769043, at *1 (Del. Ch. Feb. 26, 2016).

21

that" Freeman Family "is not entitled to be indemnified by the Company pursuant to this Section 14."[63]

Here, Freeman Family sought advancement in a written letter on August 30, 2018. In that letter, Freeman Family also committed itself to comply with the obligations listed in Section 14 of the Operating Agreement,[64] which includes the undertaking requirement. Freeman Family removed all doubt and filed a separate undertaking on December 21, 2018. Section 14(b) of the Operating Agreement requires only the "receipt of an undertaking by or on behalf of such Indemnitee to repay such advance if it shall ultimately be determined that such Indemnitee is not entitled to be indemnified by the Company pursuant to this Section 14."[65] Following this Court's lead in *Delphi Easter Partners Ltd. Partnership v. Spectacular Partners,*

---

[63] Compl. Ex. 1 § 14(b).

[64] Brown Aff. Ex. 4.

[65] Compl. Ex. 1 § 14(b).

22

*Inc.*,[66] *Underbrink v. Warrior Energy Services*,[67] and *In re Genelux Corp.*,[68] I give the undertaking meaning based on its substance, not its form, and deem it valid. Thus, Freeman Family is entitled to fees-on-fees.[69]

## III. CONCLUSION

For the reasons set forth above, Freeman Family is entitled to advancement. Therefore, Freeman Family's Motion for Judgment on the Pleadings is GRANTED and Park Avenue's Cross-Motion for Judgment on the Pleadings is DENIED.

**IT IS SO ORDERED**.

---

[66]    1993 WL 328079 (Del. Ch. Aug. 6, 1993) (holding that the proper basis to consider the sufficiency of an undertaking is whether the receiver could sue on it, that it was no barrier that "[t]he giving of an undertaking to [the proper party] would have been formally clearer and more conventional," and that the plaintiff was entitled to advancement beginning at the time of the unconventional undertaking).

[67]    2008 WL 2262316, at * 14 (Del. Ch. May 30, 2008) ("[B]ecause [the advancer] did not object to the form of [the advancee's] undertakings contemporaneously with its initial denial of their request for advancement and did not specify, even generally, the basis for their later objection . . . I reject [the advancer's] argument that [the advance] should be denied advancement for lack of a proper undertaking."). Here, Park Avenue did not raise the issue of the undertaking until its reply brief.

[68]    2015 WL 6390232 (Del. Ch. Oct. 22, 2015) (holding that "it would exalt form over substance to dismiss this action [for advancement] based on the fact that it was filed before [the plaintiff] submitted evidence of his expenses and a written undertaking," in part because the case was expedited).

[69]    The Complaint and Freeman Family's Opening Brief also sought pre- and post-judgment interest. *See* Compl. ¶ 42; *id.* at 11; Pl.'s Opening Br. 24 n.6; *id.* at 25. Park Avenue did not object or otherwise respond to this request in its Answering Brief. Thus, I grant pre- and post-judgment interest.

23